United States District Court

Eastern District of Louisiana

Rogers

v.                                              CIVIL ACTION NO. 2:03-cv-00190/K/1

Bristol-Myers Squibb


The record reflects that a Notice of Removal has been filed in the captioned case; accordingly,

Pursuant to 28 U.S.C. 1447(b), the removing party is directed to file within 10 days:

(1) A list of all parties still remaining in this action;

(2) Copies of all pleadings, including answers, filed by those parties in state court; and

(3) Copies of the return on service of process on those parties filed in state court.

New Orleans, Louisiana, January 22, 2003.

By Direction of the Court

LORETTA G. WHYTE, CLERK



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF L.

2003 JAN 21   PM 2: 10

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MELINDA ROGERS | * | CIVIL ACTION **03-0190** |
| | * | |
| VERSUS | * | |
| | * | JUDGE **SECT. K MAG. 1** |
| BRISTOL-MYERS SQUIBB COMPANY, | * | |
| INC., DR. RUSSELL HENRY, | * | |
| DR. DAREN D. PARSA, DR. DENNIS M. | * | |
| SPIERS AND K MART CORP. D/B/A | * | MAGISTRATE JUDGE |
| K MART PHARMACY | * | |

**************************************

## <u>NOTICE OF REMOVAL</u>

**TO:   THE JUDGES OF THE UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF LOUISIANA,**

Pursuant to 28 U.S.C. § 1446, defendant, Bristol-Myers Squibb Company (hereinafter

referred to as "BMS"), with full reservation of any and all defenses, objections, and exceptions,

provides Notice of Removal of this civil action to the United States District Court for the Eastern

District of Louisiana and respectfully represents that:

-1-

Fee $150.7
Process_____
X  Dktd _caa_
CtRmDep_____
Doc.No._____

1.

On December 6, 2002, plaintiff commenced an action in the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana, entitled "*Melinda Rogers v. Bristol-Myers Squibb Company, Inc., Dr. Russell Henry, Dr. Daren D. Parsa, Dr. Dennis M. Spiers and KMart Corp. D/B/A K Mart Pharmacy* " No. 137202, Division "B" on the docket of said court.

2.

Service of process was made on defendant, BMS, on December 19, 2002, via the Louisiana Long Arm Statute. Pursuant to 28 U.S.C. § 1446(a), defendant attaches a copy of the Citation and the Petition for Damages as Exhibit "A" to this Notice of Removal. This Notice of Removal is filed within thirty days of service of the Petition for Damages and is timely filed under 28 U.S.C. § 1446(b).

3.

As is shown more fully below, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a), as the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00, and there is complete diversity of citizenship between plaintiff and the only properly joined defendant, BMS. Thus, this action may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. § 1441.

4.

Named plaintiff, Melinda Rogers, is and was at the time the state court action was commenced, a citizen of the State of Louisiana. *See* Exhibit A, Petition for Damages, ¶ 1.

5.

Defendant, BMS, is and was at the time the action was commenced, a foreign corporation organized under the laws of Delaware with its principal place of business in New York.

6.

Defendant, Kmart is and was at the time the action was commenced, a Michigan corporation, with its principal place of business in Michigan. Before the filing of this suit, Kmart Corporation filed a petition for bankruptcy on January 22, 2002. *In re Kmart Corporation, et* al., No. 02-02474 (N.D. Ill., Eastern Div.). Consent to a removal from a defendant who files for bankruptcy is unnecessary. *Rigney v Midcon Offshore, Inc.,* 1997 U.S. LEXIS 20678 (E.D. La. 1997); *Livaccari v. Zack's Famous Frozen Yogurt,* 1992 WL 178734 (E.D. La. 1992)(and cases cited therein).[1]  Further, due to Kmart's bankruptcy status, federal question jurisdiction exists as an additional basis for removal under 28 U.S.C. § 1334 (B) and 28 U.S.C. § 1452.

7.

Plaintiff has fraudulently joined as defendants, Dr. Russell Henry, Dr. Daren D. Parsa and Dr. Dennis M. Spiers (collectively referred to as "Drs. Henry, Parsa and Spiers") for the sole purpose of attempting to defeat or prevent removal of this action to this Court. Further, plaintiff

---

[1] Although a diverse defendant, BMS also submits that Kmart is fraudulently joined. There is no legal basis for plaintiff's claims against Kmart because no legal duty exits under the law of the State of Louisiana which would require a druggist or pharmacist to advise or warn consumers of the adverse effects of a prescription drug. *See, Perksin v. Bayer Corp.,* No. 02-2023 (W.D. Wash. Feb. 26, 2002)(Rothstein, J.)(applying Louisiana law, holding retailer-pharmacy defendant fraudulently joined); *McKinney v. Warner Lambert,* No. 01-1103 (E.D. La. May 15, 2001)(Lemelle, J.); *Falco v. Warner Lambert,* No. 01-1140 (E.D. La. May 16, 2001)(Feldman, J.); *In Re Rezulin Products Liability Litigation,* 133 F.Supp.2d 272, 294 (S.D. N.Y. 2001); *Brown v. Reynolds Tobacco,* 1992 WL 161128 at *7 (E.D. La. June 23, 1992); *Barrett v. Reynolds,* 1999 WL 460778 at *2 (E.D. La. June 29, 1999); *Strickland v. Brown Morris Pharmacy, Inc.,* 1996 WL 537736 (E.D. La. Sept. 20, 1996); *Gassen v. East Jefferson General Hospital,* 628 So.2d 256 (La. App. 5th Cir. 1993); *Kinney v. Hutchinson,* 449 So.2d 696 (La. App. 5th Cir. 1984); and *Cobb v. Syntex Laboratories, Inc.,* 444 So.2d 203 (La. App. 1st Cir. 1983). As such, plaintiff's joinder of Kmart in this suit is fraudulent and must be disregarded for jurisdictional purposes.

has failed to set forth the domiciles of Drs. Henry, Parsa and Spiers, in violation of Louisiana Code of Civil Procedure Article 891.  As is more fully set forth below, plaintiff has wholly failed to show any basis for a claim for relief or right of recovery against these defendants.

8.

Upon information and belief, Drs. Henry, Parsa and Spiers are citizens of the State of Louisiana and qualified health care providers under the Louisiana Medical Malpractice Act, La. R.S. § 40:129.47, and plaintiff has not instituted the requisite medical review panel proceedings before filing suit in district court.  Given that La. R.S. § 40:1299.47(B)(1)(a)(i) mandates that no action against a health care provider "may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel," plaintiff's joinder of Drs. Henry, Parsa and Spiers in this suit is fraudulent.  *Carter v. Warner-Lambert*, No. 01-0666, slip opinion (memorandum ruling) (W.D. La. July 2, 2001); *Hamilton v. Warner-Lambert*, No. 01-0667, slip opinion (memorandum ruling) (W.D. La. June 29, 2001); *Gill v. Ethicon, Inc.*, No. 00-CV-2042, slip opinion (W.D. La. Jan. 22, 2001) (Report & Recommendation), Judgment (W.D. La. Feb. 23, 2001); *Comb v. American Medical Group*, No. 98-1250, slip opinion (W.D. La. Sept. 30, 1998); *Boxie v. Gate Pharmaceuticals, Inc.*, No. 98-CV-2142, slip opinion (W.D. La. March 12, 1999) (Report & Recommendation), Judgment (W.D. La. Apr. 12, 1999).[2]

---

[2] Although there is a split of authority within the Louisiana federal courts on this issue, *see, for example, Duffy v. Pendleton Memorial Methodist Hosp.*, No. 98-977, 1998 WL 273114 (E.D. La. May 28, 1998), BMS submits that the correct result was reached in the jurisprudence cited in the text of this removal notice.

-4-

9.

The right to remove a diversity action cannot be defeated by the fraudulent joinder of resident defendants against whom there is no reasonable basis to predict that a claim could be stated under state law. *Chesapeake and Ohio Ry. v. Cockrell*, 232 U.S. 146, 152, 34 S. Ct. 278, 280, 58 L.Ed. 544 (1914); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995). As such, the citizenship of defendants, Drs. Henry, Parsa and Spiers must be ignored for the purposes of diversity jurisdiction. *Burden*, 60 F.3d at 218. Further, because these defendants have been fraudulently joined, their consent need not be obtained for removal to federal court. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993), *cert. denied*, 510 U.S. 868 (1993).

10.

It is facially apparent that the amount in controversy exceeds $75,000, exclusive of interest and costs. This is a product liability suit arising out of the alleged use of Serzone® by the plaintiff, Melinda Rogers. The Petition alleges that "as a result of taking Serzone, plaintiff has developed life-threatening medical conditions, including serious and significant liver injuries." Petition, ¶ 15. Plaintiff further alleges that she has " . . .sustained harm" and that "[t]hese injuries have caused, and will continue in the future to cause, extensive pain and suffering and severe emotional distress and have substantially reduced Plaintiff's ability to enjoy life." Petition, ¶ 45. Plaintiff also alleges she will have "to expend substantial sums of money for medical, hospital and related care, all to Plaintiff's general damage." Petition, ¶ 45. Plaintiff alleges she "suffered the following damages: 1) severe past, present, and future physical pain and

suffering; 2) past, present, and future mental anguish; 3) loss of enjoyment of life; 4) shortened

life expectancy; 5) past and future medical expenses; 6) loss of consortium and loss of service

and society; 7) medical monitoring; 8) justifiable fear and fright of bodily injury due to having

consumed Serzone; 9) lost wages; 10) loss of earning capacity; 11) significantly increased risk of

serious latent disease." Petition, ¶ 68.  The preponderance of the evidence is that the amount in

controversy exceeds $75,000. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)

($75,000 jurisdictional minimum was facially apparent from the allegations of the complaint

where plaintiff alleged that after the defendant lost plaintiff's heart medication, plaintiff became

ill, suffered pain and humiliation, experienced a temporary inability to do housework and

incurred unspecified ambulance expenses, hospitalization expenses, property damage and travel

expenses).

11.

Defendant will promptly serve written notice of the filing of this Notice of Removal with

the Clerk of Court for the 32nd Judicial District Court for the Parish of Terrebonne, State of

Louisiana.

-6-

WHEREFORE, Defendant, Bristol-Myers Squibb Company, prays that the above numbered and entitled cause on the docket of the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana, be removed from that Court to the docket of the United States District Court for the Eastern District of Louisiana.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

BY: _____

QUENTIN F. URQUHART, JR., T.A. (La. Bar No. 14475)
KIM E. MOORE (La. Bar No.18653)
VANESSA M. OTERO (La. Bar No. 27597)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Facsimile:  (504) 310-2101
Counsel for Defendant, Bristol-Myers Squibb Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all known counsel for all parties to this proceeding by mailing a copy of same to each by First Class United States mail, properly addressed and postage prepaid, on this _21st_ day of January, 2003.

_____

-7-


CT System

**Service of Process Transmittal Form**
New York, New York

**12/20/2002**
CCSOP WS 0005015359

**TO:** Zenola Harper
Bristol-Myers Squibb Company
345 Park Avenue
New York, NY 10154-0000

Phone: (212) 546-4597 ex
EMAIL: ZENOLA.HARPER@BMS.COM

**RE:** **PROCESS SERVED IN NEW YORK**

**FOR** Bristol-Myers Squibb Company Domestic State: De

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **1. TITLE OF ACTION:** | Melinda Rogers, pltf. vs Bristol-Myers Squibb Company, Inc, et al Defts. |
| **2. DOCUMENT(S) SERVED:** | Summons, and Petition |
| **3. COURT:** | 32nd Judicial District Court for the Parish of Terrebonne of Louisiana Case Number 137202 |
| **4. NATURE OF ACTION:** | Diet Drug Litigation. |
| **5. ON WHOM PROCESS WAS SERVED:** | CT Corporation System, New York, New York |
| **6. DATE AND HOUR OF SERVICE:** | By Certified mail on 12/19/2002 with Postmarked Date 12/16/2002 |
| **7. APPEARANCE OR ANSWER DUE:** | Within 30 Days. |
| **8. ATTORNEY(S):** | Allan Berger & Associates PLC 504/486-9481 4173 Canal Street New Orleans, LA 70119 |
| **9. REMARKS:** | i-Note sent 12/20/2002 to DONNA.MESSINGER@BMS.COM i-Note sent 12/20/2002 to ZENOLA.HARPER@BMS.COM An imaged copy of the Lawsuit Document is available thru our Website (CTADVANTAGE.com). |

| | | | |
|---|---|---|---|
| **CC:** | Donna Messinger Bristol-Myers Squibb Company 345 Park Avenue New York, NY 10154-0000 | **SIGNED** | CT Corporation System |
| | | **PER** | Concetta Bertini /RJ |
| | | **ADDRESS** | 111 Eighth Avenue New York, NY 10011 SOP WS 0005015359 |

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

EXHIBIT
A

CITATION (LONG ARM STATUTE)

STATE OF LOUISIANA
32nd JUDICIAL DISTRICT COURT
SITTING IN AND FOR THE PARISH OF TERREBONNE

MELINDA ROGERS

VS NO 137202

BRISTOL-MYERS SQUIBB CO
ET AL

TO: BRISTOL-MYERS SQUIBB COMPANY INC
THROUGH THEIR REGISTERED AGENT
CT CORPORATION SYSTEM FOR SERVICE OF PROCESS
111 EIGHT AVENUE
NEW YORK, NEW YORK 10011

YOU ARE HEREBY SUMMONED to comply with the demand of the

ORIGINAL

Petition, A___ true and faithful cop Y whereof accompanies this citation, or to make
an appearance by filing an answer or other pleading thereto, in writing with the Clerk of
Court at his office in the City of Houma, within thirty (30) days after the service hereof,
and your failure to so comply will subject you to the penalty of having a default judgment
rendered against you.

WITNESS the Honorable Judges of said Court this  10  day of
DECEMBER_____, A.D., 19 2002 .

/s/ Wendy C. Elk

(L.S.)_____
Deputy Clerk of Court

A true copy: Clerk's Office, Houma, La._____DEC 1 0 2002_____, 19_____.

(L.S.) Wendy C Elk
Deputy Clerk of Court

Requested By:
JOHN D SILEO
4173 CANAL ST
NEW ORLEANS, LA 70119

32ND JUDICIAL DISTRICT COURT FOR THE PARISH OF TERREBONNE

STATE OF LOUISIANA

NO.  137202

DIVISION:

MELINDA ROGERS          **JOHN R. WALKER**

VERSUS          **JUDGE - DIVISION B**

BRISTOL-MYERS SQUIBB COMPANY, INC.
DR. RUSSELL HENRY, DR. DAREN D. PARSA,
AND DR. DENNIS M. SPIERS  AND K MART CORP.
D/B/A K MART PHARMACY

FILED: _____ DEC 6 2002 _____          /s/ Carla O. Lodet

DEPUTY CLERK

NOW INTO COURT, through undersigned counsel, comes Plaintiff, MELINDA

ROGERS, a person of the full age of majority and a resident of LOUISIANA, Parish of

TERREBONNE, who respectfully represents that:

### BACKGROUND

1.    Plaintiff, MELINDA ROGERS, is a resident of LOUISIANA, who has taken the

prescription drug nefazodone, more commonly known by its brand name Serzone,

manufactured by Defendant.

2.    Defendant, Bristol-Myers Squibb Company, Inc. (hereinafter "Bristol") is a

Delaware Corporation with its principal place of business at 345 Park Avenue, New

York, New York 10154. At all times relevant hereto, Defendant BRISTOL was engaged

in the business of manufacturing, marketing, developing, distributing, promoting, testing,

labeling and/or selling the pharmaceutical drug Serzone throughout the United States.

3.    Defendants, DR. RUSSELL HENRY, DR. DAREN D. PARSA, AND DR.

DENNIS M. SPIERS , who at all times prescribed Serzone to his/her patient and was

charged with monitoring the patient while on this drug.

### FACTUAL BACKGROUND

4.    At all relevant times, BRISTOL, designed, tested packaged, supplied, marketed,

sold, advertised and otherwise distributed the drug nefazodone hydrochloride under the

brand name Serzone.

5.    On or about December 22, 1994, the drug Serzone (nefazodone hydrochloride)

was approved for use in the United States by the Food and Drug Administration ("FDA") for the treatment of depression. Prior to drug approval by the FDA, defendant, BRISTOL, completed multiple pre-clinical studies to test the safety and efficacy of Serzone. As stated in the product label, only two of the eight pre-clinical trials demonstrated that Serzone was effective in the treatment of depression.

6.       In the pre-clinical studies of Serzone, 16% of the 3,496 patients who used Serzone had to discontinue the use of Serzone because of an adverse experience. In these same pre-clinical studies, abnormal liver function tests, which are indicative of liver damage, occurred frequently - at least in 1 our of every 100 patients. Despite the frequency of abnormal liver function tests, Defendant BRISTOL failed to include any warning of liver toxicity in the initial warnings.

7.       Once Serzone was introduced into the market, Defendant BRISTOL began to receive reports of liver necrosis and liver failure, sometimes leading to liver transplantation and/or death. On or about June 1, 2000, Defendant BRISTOL was required to change the safety label of Serzone to include the statement that the post-introduction clinical experience with Serzone showed "rare reports of liver necrosis and liver failure, in some cases leading to liver transplantation and/or death."

8.       On or about January 23, 2001, the FDA again required Defendant BRISTOL to change the product safety label of Serzone to exclude the word "rare" from the statement in the product safety label to explain there had been "reports of liver necrosis and liver failure, in some cases leading to liver transplantation and/or death."

9.       As of June 2001, 109 cases of serious adverse hepatic events with a temporal relationship to Serzone therapy were reported to either BRISTOL-MYERS or the FDA. Of these 109 cases, there were 23 cases of liver failure - 16 of which led to transplantation and/or death.

10.       On or about June 21, 2001, as a result of the high incidence of serious adverse liver events, Health Canada, the Canadian equivalent of the FDA, required a letter to be sent to Canadian health care providers to inform them of the serious adverse liver events

-2-

associated with the drug. The Canadian Medical Association followed this letter, on or about June 27, 2001, with a bulletin warning of "severe haptic injury," "liver failure" and death associated with the use of Serzone.

11.    On or about December 4, 2001, the FDA required Defendant BRISTOL to include a Black-Box warning on the safety label of Serzone because of the drug's liver toxicity. This change was not made available to prescribing physicians and patients who were currently on, or had been on, Serzone until on or about January 8, 2002.

12.    The "Black Box" warning informed the public that at least 1 in 250,000 to 300,000 people who took Serzone for at least a year for the treatment of depression would either die or require liver transplantation. The warning added the fact that the actual number of serious adverse liver events was likely much greater than the reported number because of "underreporting." The rate of underreporting in the United States has been estimated as high as 99%.

13.    Despite the possibility of adverse hepatic events, liver toxicity, liver damage and/or death associated with Serzone, Defendant BRISTOL has not, at any time during the marketing of the drug Serzone, recommended that patients using this drug be monitored for liver injury.

### Plaintiff's Use of Serzone

14.    Plaintiff was prescribed and started taking Serzone on or about July 1995 and discontinued its use on or about March 2002.

15.    As a result of taking Serzone, Plaintiff has developed life-threatening medical conditions, including serious and significant liver injuries.

16.    Had Defendant BRISTOL and/or DR. RUSSELL HENRY, DR. DAREN D. PARSA, AND DR. DENNIS M. SPIERS, properly disclosed the risks associated with using Serzone, Plaintiff would not have taken the drug.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

17. The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference.

18. Defendant BRISTOL had a duty to exercise reasonable care in the warning about, design, testing, labeling, manufacture, marketing, sale and/or distribution of Serzone, including a duty to ensure that Serzone did not cause users to suffer from unreasonable, unknown and/or dangerous side effects.

19 Defendant BRISTOL failed to exercise reasonable care in the warning about, design, testing, labeling, manufacture, marketing, sale and/or distribution of Serzone in that Defendants knew or should have known that taking Serzone caused unreasonable and dangerous injuries. Such injuries include, but are not limited to, adverse hepatic events, liver toxicity, liver damage and/or death.

20. Defendant BRISTOL was negligent in the warning about, design, testing, labeling, manufacture, marketing, sale, and/or distribution of Serzone in that they:

    a. failed to exercise due care in designing, developing and manufacturing Serzone so as to avoid the aforementioned risks to individuals using the drug;

    b. failed to provide adequate warnings with the drug that would alert consumers and physicians to the potential risks and serious side effects of the drug;

    c. failed to provide adequate training to medical care providers for the appropriate use of Serzone;

    d. delayed and failed to provide adequate warnings about liver and other severe injury and/or death to medical care providers which might have dissuaded medical providers from prescribing Serzone and therefore depriving medical providers from weighing the true risks against the benefits of prescribing Serzone;

    e. failed to warn Plaintiff and her prescribing physician either directly or indirectly, orally or in writing, that using Serzone might result in:

        i. the need for comprehensive, regular monitoring to ensure early

-4-

discovery of the possible life-threatening side effects of the drug;

ii.    the possibility of becoming disabled as a result of taking Serzone and/or having to undergo liver transplant surgery to correct liver damage; or

iii.    the possibility of liver damage that may become debilitating and painful, require extensive surgery and/or multiple hospitalizations, resulting in liver failure and/or death;

f.    failed to advise the FDA and the public of material facts regarding the safety of Serzone such that if the FDA knew these facts, Serzone would never have been approved for use in the United States;

g.    placed an unsafe product into the stream of commerce;

h.    failed to adequately and properly test the drug before placing the drug on the market;

i.    failed to provide adequate post-marketing warnings or instructions after Defendant knew or should have known of the significant risks associated with the use of the drug;

j.    encouraged misuse and overuse while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including plaintiff, in order to make a profit from sales; and

k.    were otherwise careless or negligent.

21.    Defendant BRISTOL knew or should have known that the drug caused unreasonably dangerous risks and serious side effects of which users and/or consumers of the drug, including Plaintiff, were not aware. Defendant nevertheless advertised, promoted, marketed, sold, distributed and/or supplied Serzone knowing that there were safer methods for the treatment of depression.

22.    Defendant BRISTOL knew or should have known of Serzone's defective nature, as set forth herein, but continued to design, manufacture, market and sell Serzone so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in conscious and/or negligent disregard of the foreseeable harm caused by

Serzone.

23.     Defendant BRISTOL failed to disclose facts known or available to them, as
alleged herein, in order to ensure FDA approval and increased sales of Serzone.

24.     Defendant BRISTOL knew or should have known that consumers such as Plaintiff
would suffer injury as a result of Defendant's failure to exercise reasonable care as
described above.

25.     As a direct, proximate and producing results of the negligence of Defendant,
Plaintiff has sustained harm.  These injuries have caused, and will continue in the future
to cause, extensive pain and suffering and severe emotional distress and have
substantially reduced Plaintiff's ability to enjoy life.  In addition, Defendant BRISTOL's
negligence has caused, and will in the future case, Plaintiff to expend substantial sums of
money for medical, hospital, and related care, all to Plaintiff's general damage.

26.     As a direct, legal proximate and producing result of the negligence of Defendant,
BRISTOL, Plaintiff has been injured in health, strength and activity and has suffered
physical injuries as well as mental anguish.  All of said injuries caused Plaintiff intense
anxiety, distress, fear, pain, suffering and distress secondary to physical injury and
damages.

27.     As a direct, legal, proximate and producing result of the negligence of Defendant
BRISTOL, Plaintiff has required reasonable and necessary health care treatment and
services and did incur expenses therefor.  Upon information and belief, Plaintiff will in
the future be required to obtain medical and/or hospital care, attention and services in an
amount yet to be ascertained.

### SECOND CAUSE OF ACTION

### GROSS NEGLIGENCE

28.     The foregoing paragraphs of this Complaint are realleged and incorporated by
reference.

29.     Defendant BRISTOL, had a duty to exercise reasonable care in the warning about,
design, testing, manufacture, marketing, labeling, sale and/or distribution of Serzone,

including a duty to ensure that Serzone did not cause users to suffer from unreasonable and dangerous side effects.

30.     Defendant BRISTOL, failed to exercise reasonable care in the warning about, design, testing, manufacture, marketing, labeling, sale and/or distribution of Serzone in that Defendants knew or should have known that taking Serzone caused unreasonable and life-threatening injuries, as alleged herein.

31.     Defendant BRISTOL was grossly negligent in the warning about, design, testing, manufacture, marketing, labeling, sale and/or distribution of Serzone in that they;

        a.      failed to exercise due care in designing, developing and manufacturing Serzone so as to avoid the aforementioned risks to individuals using the drug;

        b.      failed to provide adequate warnings with Serzone regarding its possible risks and adverse affects as well as the comparative severity and duration of such adverse effects;

        c.      failed to provide adequate training to medical care providers for the appropriate use of Serzone;

        d.      failed to advise the FDA and the public of material facts regarding the safety of Serzone;

        e.      placed an unsafe product into the stream of commerce; and

        f.      were otherwise grossly negligent.

32.     Although Defendant, BRISTOL, knew or recklessly disregarded the fact that Serzone caused potentially lethal side effects, Defendant continued to market Serzone to consumers, including Plaintiff, without disclosing these side effects when there were safer, alternative methods for treatment.

33.     Defendant, BRISTOL, knew and/or consciously or recklessly disregarded the fact that consumers such as Plaintiff would suffer injury as a result of Defendant's failure to exercise reasonable care as described above.

34.     Defendant, BRISTOL, knew of, or recklessly disregarded Serzone's defective nature, as set forth herein, but continued to design, manufacture, market and sell Serzone

so as to maximize sales and profits at the expense of the health and safety of the public,

including plaintiff, in conscious and/or reckless disregard of the foreseeable harm caused

by Serzone.

35.     Defendant, BRISTOL, intentionally concealed or recklessly failed to disclose

facts known to them in order to ensure that Serzone would receive FDA approval and

increased sales of Serzone.

36.     Defendant, BRISTOL, delayed providing warnings about Serzone's dangerous

side effects - and then failed to provide adequate warnings - which would have dissuaded

medical providers from prescribing Serzone, thus depriving medical providers and

patients from being able to weigh the true risks against the benefits of prescribing

Serzone.

37.     As a direct and proximate result of the gross negligence, willful and wanton

misconduct, or other wrongdoing and actions of Defendant, BRISTOL, described herein,

which constitutes a deliberate act or omission with knowledge of a high degree of

probability of harm and reckless indifference to the consequences, Plaintiff has sustained

harm.  These injuries have caused, and will continue to cause, extensive pain and

suffering and severe emotional distress.  In addition, Defendant's gross negligence has

caused, and will in the future cause, Plaintiff to expend substantial sums of money for

medical, hospital, and related care, all to Plaintiff's general damage.

38.     As a direct and proximate result of the gross negligence, willful and wanton

misconduct, or other wrongdoing and actions of Defendant BRISTOL described herein,

which constitutes a deliberate act or omission with knowledge of a high degree of

probability of harm and reckless indifference to the consequences, Plaintiff has been

injured in health, strength and activity and has suffered physical injuries as well as mental

anguish.  All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering

and distress secondary to physical injury and damages.

39.     As a direct and proximate result of the gross negligence, willful and wanton

misconduct, or other wrongdoing and actions of Defendant BRISTOL described herein,

which constitutes a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences, Plaintiff has required reasonable and unnecessary health care treatment and services and did incur expenses therefor. Upon information and belief, Plaintiff will in the future be required to obtain medical and/or hospital care, attention and services in an amount yet to be ascertained.

**THIRD CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY**

**DEFECTIVE DESIGN**

40.     The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference.

41.     At all times material hereto, Defendant BRISTOL has engaged in the business of designing, testing, manufacturing, developing, labeling, marketing, selling, supplying and/or distributing the drug Serzone, which is defective and unreasonably dangerous to users and/or consumers of the drug, including Plaintiff

42.     At all times material hereto, Serzone was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendant BRISTOL in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

        a.     When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonable foreseeable purpose or as intended to be used, thereby subjecting users and/or consumers of the drug, including Plaintiff, to risks which exceeded the benefits of the drug;

        b.     When placed in the stream of commerce, Serzone was defective in design and formulation, making use of the drug more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with depression;

        c.     The drug was insufficiently tested;

      d.     The drug caused harmful side effects that outweighed any potential utility;

      e.     The drug was not accompanied by adequate labeling, instructions for use and/or warnings to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side-effects associated with its use, thereby rendering Defendants liable to the Plaintiff;

      f.     In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of the potential and actual risk of harm would have concluded that Serzone should not have been marketed in that condition.

43.     At all times Serzone was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was expected to reach, and did reach, users and/or consumers of the drug across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

44.     At all times, Plaintiff used Serzone for its intended or reasonable foreseeable purpose.

45.     As a direct and proximate result of the defective condition of Serzone, as manufactured and/or supplied by Defendant BRISTOL, Plaintiff has sustained harm. These injuries have caused, and will continue in the future to cause, extensive pain and suffering and severe emotional distress and have substantially reduced Plaintiff's ability to enjoy life. In addition, the defective condition of Serzone has caused, and will in the future cause, Plaintiff to expend substantial sums of money for medical, hospital, and related care, all to Plaintiff's general damage.

46.     As a direct and proximate result of the defective condition of Serzone, as manufactured and/or supplied by Defendant, Plaintiff has been injured in health, strength and activity and has suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress

secondary to physical injury and damages.

47.     As a direct and proximate result of the defective condition of Serzone, as manufactured and/or supplied by Defendant, Plaintiff has required reasonable and necessary health care treatment and services and did incur expenses therefor.  Upon information and belief, Plaintiff will in the future be required to obtain medical and/or hospital care, attention and services in an amount yet to be ascertained.

### FOURTH CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY

### FAILURE TO WARN

The foregoing paragraphs of this Complaint are realleged and incorporated by reference.

48.     Serzone was defective and unreasonably dangerous when it left the possession of the Defendant in that it contained warnings insufficient to alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, to the dangerous risks and reactions associated with Serzone, when used for its intended or reasonably foreseeable purpose.  Those dangerous risks and reactions included, but were not limited to, adverse hepatic events, liver toxicity, liver damage and/or death and other serious and life threatening side effects.

49.     At all times, Plaintiff used the drug for its intended or reasonably foreseeable purpose.

50.     Plaintiff could not have discovered any defect in the drug through the exercise of care.

51.     Defendant BRISTOL, as the manufacturer of a prescription drug, it's held to the level of knowledge of an expert in the field.

52.     The warnings that were given by Defendant were neither accurate nor clear and/or were ambiguous.

53.     Defendant BRISTOL had a continuing duty to warn the medical pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks and serious side effects associated with the use of Serzone.

-11-

54.    As a direct and proximate result of the defective condition of Serzone, as manufactured and/or supplied by Defendant BRISTOL, Plaintiff has sustained harm. These injuries have caused, and will continue in the future to cause, extensive pain and suffering and severe emotional distress and have substantially reduced Plaintiff's ability to enjoy life. In addition, the defective condition of Serzone has caused, and will in the future cause, Plaintiff to expend substantial sums of money for medical, hospital, and related care, all the Plaintiff's general damage.

55.    As a direct and proximate result of the defective condition of Serzone, as manufactured and/or supplied by Defendant BRISTOL, Plaintiff has been injured in health, strength and activity and has suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

56.    As a direct and proximate result of the defective condition of Serzone, as manufactured and/or supplied by Defendant BRISTOL, Plaintiff has required reasonable and necessary health care treatment and services and did incur expenses therefor. Upon information and belief, Plaintiff will in the future be required to obtain medical and/or hospital care, attention and services in an amount yet to be ascertained.

## FIFTH CAUSE OF ACTION

## REDHIBITION

57.    The foregoing paragraphs of this Complaint are realleged and incorporated by reference.

58.    Defendant BRISTOL is a "seller" within the meaning of Louisiana law, more particularly those articles, including Civil Codes Articles 2520, et seq.

59.    At the time that Defendant BRISTOL and /or defendant K MART CORP. D/B/A K MART PHARMACY, designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed the drug Serzone, Defendant BRISTOL and/or defendant pharmacy knew of Serzone's intended, reasonably foreseeable and/or ordinary use.

60.    Plaintiff, in purchasing Serzone, reasonably relied upon the skill and judgment of

Defendant BRISTOL and/or defendant K MART CORP. D/B/A K MART PHARMACY

as to whether Serzone was of merchantable quality and safe and fit for its intended,

reasonably foreseeable and/or ordinary use

61.    Serzone was not safe for its intended, reasonably foreseeable and/or ordinary use

because the product was in a defective condition and unreasonably dangerous and unfit

for the intended, reasonably foreseeable and/or ordinary purpose for which it was

intended and described above, rendering Serzone with a redhibition defect for the

following:

a.    Use of Serzone carried a risk of, among other things, adverse hepatic

events, liver toxicity, liver damage and/or death and other serious and life threatening side

effects;

b.    Defendants failed to include adequate warnings with the drug that would

alert the medical, pharmaceutical and/or scientific communities, and users and/or

consumers of the drug, including Plaintiff, of the potential risks and serious side effects of

the drug;

c.    Defendants, BRISTOL and K MART CORP. D/B/A K MART

PHARMACY failed to provide adequate post-marketing warnings or instructions after

Defendant knew or should have known of the potential risks and serious side effects

associated with the use of the drug.

62.    As a direct and proximate result of Defendant BRISTOL's and K MART CORP.

D/B/A K MART PHARMACY breach of implied warranty, Plaintiff has sustained harm.

These injuries have caused, and will continue in the future to cause, extensive pain and

suffering and severe emotional distress and have substantially reduced Plaintiff's ability

to enjoy life.  In addition, Defendant BRISTOL's and K MART CORP. D/B/A K MART

PHARMACY breach of implied warranty has caused and will in the future cause,

Plaintiff to expend substantial sums of money for medical, hospital, and related care, all

to Plaintiff's general damage.

63.     As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff has been injured in health, strength and activity and has suffered physical injuries as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

64.     As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff has required reasonable and necessary health care treatment and services and did incur expenses therefor. Upon information and belief, Plaintiff will in the future be required to obtain medical and/or hospital care, attention and services in an amount yet to be ascertained.

65.     Defendant BRISTOL's and K MART CORP. D/B/A K MART PHARMACY aforementioned conduct was committed in bad faith thereby entitling Plaintiff to penalties, costs and attorney fees along with a refund of the purchase price. Had plaintiff been properly informed, plaintiff would not have purchased Serzone. Alternatively, if this court finds that any defendant was unaware of the defect in the product, then plaintiff is still entitled to a refund of the purchase price from defendant in an amount appropriate to punish Defendant and deter it from similar conduct in the future, as well as mental anguish. All of said injuries caused Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to physical injury and damages.

## SIXTH CAUSE OF ACTION

### MEDICAL MALPRACTICE

66.     Petitioner alleges that his/her treating physician, was negligent in the following, non-exclusive list of particulars:

     a.     Failure to carefully follow Serzone's package insert instructions, recommendations, and warnings in prescribing Serzone to plaintiff.

     b.   Failure to fully monitor and evaluate petitioner heart and/or liver function and/or other adverse medical effects.

     c.   Failure to accurately diagnose petitioner's heart and/or liver and/or other adverse medical effects when petitioner exhibited signs of a deteriorating medical condition;

   d.  Failure to recognize that Serzone was a cause of petitioner's heart and/or liver problems and/or other adverse medical effects;

   e.  Failure to warn or adequately inform petitioner of the potential harm associated with the use of Serzone, and failure to protect petitioner from that harm; and

   f.  Any and all other acts of negligence which will be proven at the trial of this matter.

67.  As a result of the negligence of the defendants, BRISTOL-MYERS SQUIBB CO. AND K MART CORP. D/B/A K MART PHARMACY and the treating physicians, DR. DAREN D. PARSA, DR. DENNIS M. SPIERS AND DR. RUSSELL HENRY, petitioner has suffered adverse medical conditions.

68.  As a result of the negligence of the defendants, BRISTOL-MYERS SQUIBB CO. AND K MART CORP. D/B/A K MART PHARMACY and the treating physicians, DR. DAREN D. PARSA, DR. DENNIS M. SPIERS AND DR. RUSSELL HENRY, this petitioner suffered the following damages:

   1)  severe past, present, and future physical pain and suffering;

   2)  past, present, and future mental anguish;

   3)  loss of enjoyment of life;

   4)  shortened life expectancy;

   5)  past and future medical expenses;

   6)  loss of consortium and loss of service and society;

   7)  medical monitoring;

   8)  justifiable fear and fright of bodily injury due to having consumed Serzone;

   9)  lost wages;

   10)  loss of earning capacity; and

   11)  significantly increased risk of serious latent disease.

WHEREFORE, Plaintiff prays for relief as follows:

a. Awarding actual damages to Plaintiff incidental to his purchase and

ingestion of Serzone in an amount to be determined at trial;

b. Awarding punitive damages to Plaintiff;

c. Awarding pre-judgment and post-judgment interest to Plaintiff;

d. Awarding the costs and expenses of this litigation to Plaintiff; and

e. For such further relief as this Court deems necessary, just and proper.

Respectfully submitted,

**ALLAN BERGER & ASSOCIATES, P.L.C.**

ALLAN BERGER (BAR NO. 2977)
JOHN D. SILEO (BAR NO. 17797)
4173 Canal St.
New Orleans, LA 70119-5972
(504) 486-9481
FAX: (504) 483-8130
*Attorneys for Plaintiffs*


PLEASE SERVE:

**BRISTOL-MYERS SQUIBB COMPANY, INC.**
THROUGH LOUISIANA LONG ARM STATUTE
THROUGH THEIR REGISTERED AGENT FOR SERVICE OF PROCESS
CT Corporation System
111 Eighth Avenue
New York, New York 10011

DR. RUSSELL HENRY
911 Verret Street
Houma, LA  70360

DR. DAREN DARIUS PARSA
500 Legion Avenue
Houma, LA  70364

DR. DENNIS M. SPIERS
4347 Bayou Side Drive
Houma, LA  70363

K MART CORP.
D/B/A K MART PHARMACY
Through their agent for service of process
CT Corporation System
8550 United Plaza Blvd.
Baton Rouge, LA  70809

A TRUE COPY OF THE ORIGINAL
CLERK'S OFFICE, HOUMA
LA. DEC 1 0 2002   19
Deputy Clerk of Court

-16-